28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
OFC LEASING CORPORATION, Plaintiff-Appellant,
v.
Ronald R. VOGEL; Kathleen J. Vogel; David H. Eisenreich;
M. Lucretia Eisenreich; Noel Caldwell; Joyce
Caldwell, Defendants-Appellees,
And Futures In Cleaning, Incorporated; Sanders Williams,
Incorporated, d/b/a Southeastern Equipment Company;
Mid-Atlantic Equipment Company; Charles Sanders; Harry A.
Davis; Homer Dale Williams; William J. Strazinski;
Strazo, Incorporated, Defendants.
 No. 93-1362.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1994.
Decided July 13, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-91-3378-3-0)
 James William Corley, Columbia, S.C., for appellant.
 Henry Ronald Stanley, Columbia, S.C., for appellees.
 On brief: Dennis Cannon, Jr., Camden, S.C., for appellees.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 OFC Leasing Corporation ("OFC") brought this suit against the individually named Defendants-Appellees Ronald R. Vogel, Kathleen J. Vogel, David H. Eisenreich, M. Lucretia Eisenreich, Noel Caldwell, and Joyce Caldwell (collectively, the "Guarantors"), among others, seeking to hold them liable for payment on a lease agreement (the "Lease Agreement") that was executed and delivered by Futures in Cleaning, Inc. ("Futures in Cleaning") to Mid-Atlantic Equipment Company ("Mid-Atlantic") on November 18, 1987. Mid-Atlantic assigned the Lease Agreement to OFC on January 4, 1988.
 
 
 2
 Specifically, OFC claims that the Guarantors are personally liable for payment on the Lease Agreement as a result of guaranties that the Guarantors allegedly signed to induce the original lessor, Mid-Atlantic, to enter into the Lease Agreement with Futures in Cleaning.
 
 I.
 
 3
 The background facts of this case are as follows. Futures in Cleaning was a dry cleaning business in the State of Ohio that was partly owned by the Guarantors and partly owned by Classic Corporation, a South Carolina corporation whose principals were H. Dale Williams and Harry A. Davis. Williams and Davis were involved in the dry cleaning business prior to the formation of Futures in Cleaning, and wanted to establish Futures in Cleaning for the purpose of selling it immediately to a third party in order to gain a profit.
 
 
 4
 Williams and Davis were both members of a men's prayer group in South Carolina, which included Guarantors Ronald R. Vogel, David G. Eisenreich, and Noel Caldwell. Williams and Davis solicited the involvement of these three men and their wives in establishing Futures in Cleaning. The Guarantors were advised that Futures in Cleaning would be sold immediately to a third party and that each couple could receive a profit of between two and five thousand dollars.
 
 
 5
 The transaction at issue in this case occurred on November 18, 1987, when Mid-Atlantic entered into the Lease Agreement with Futures in Cleaning, whereby Mid-Atlantic would lease to Futures in Cleaning certain dry cleaning equipment. Interestingly, Mid-Atlantic was owned by H. Dale Williams, Harry A. Davis, and Charles Sanders. In other words, Mid-Atlantic consisted of three people, two of whom, for all practical purposes, entered into the Lease Agreement with themselves and the Guarantors. Williams and Davis subsequently obtained the signatures of the Guarantors on certain documents entitled "Guaranty of Performance of Lease" (the "Guaranties"). The payments under the Lease Agreement allegedly were guaranteed individually by the Guarantors as a result of their having signed the Guaranties.
 
 
 6
 On January 4, 1988, Mid-Atlantic allegedly sold its November 18, 1987 Lease Agreement with Futures in Cleaning to OFC. The Guarantors were not informed of this transfer.
 
 
 7
 In March and December 1988 OFC sent letters to the Guarantors demanding payments on the Futures in Cleaning Lease Agreement. The Guarantors claim that the letters were their first indication that the documents that Williams had asked them to sign were personal guaranties. They requested copies of these documents from Williams, but never received them. Nonetheless, following Williams' advice, each couple paid one-third of a payment installment.
 
 
 8
 On July 28, 1989 William Strazinski and a corporation known as Strazo, Inc., both defendants in the initial suit, purchased Futures in Cleaning and assumed its lease and rental obligations. Strazinski subsequently defaulted on the lease payments owing to OFC, and ultimately he abandoned the physical plant of Futures in Cleaning. Concerned that another creditor might take possession of the dry cleaning equipment, the Guarantors drove a U-Haul to Ohio and took possession of the equipment in order to safeguard it. The equipment was stored in the Vogel's basement until they later turned it over to OFC. We do not know what OFC has done with the equipment.
 
 
 9
 On November 7, 1991 OFC brought this action in the district court of South Carolina against Futures in Cleaning, Mid-Atlantic, Dale Williams, Strazinski, and the Guarantors, among others, for payments under the November 18, 1987 Lease Agreement, which payments OFC contends have not been forthcoming since November 22, 1989. The district court entered an order granting default judgment against Futures in Cleaning, which is now defunct. With respect to the Guarantors, however, the district court found that OFC failed to prove that it was the owner of the Lease Agreement that it now seeks to enforce against the Guarantors. The district court therefore granted the Guarantors' motion for judgment as a matter of law in their favor. This appeal ensued.
 
 II.
 
 10
 The district court ruled in favor of the Guarantors on the ground that OFC's purchase of a lease package from Mid-Atlantic did not include the November 18, 1987 Lease Agreement between Futures in Cleaning and Mid-Atlantic, which Lease Agreement OFC now seeks to enforce against the Guarantors. We agree with the district court's conclusions.
 
 
 11
 OFC claims to have purchased the Lease Agreement executed and delivered by Futures in Cleaning to Mid-Atlantic on November 18, 1987. OFC further contends that this Lease Agreement was personally guaranteed by the Guarantors and that the Lease Agreement was assigned to OFC by Mid-Atlantic. At trial, OFC offered two documents entitled "Assignment and Pledge of Collateral" and "Bill of Sale" as proof of ownership of the November 18, 1987 Lease Agreement. The Assignment and Pledge of Collateral running from MidAtlantic, as Seller, to OFC, as Buyer, contains the following language:
 
 
 12
 WHEREAS, OFC Leasing Corporation ("Buyer") has entered into a certain Agreement dated January 09, 1987 ("Agreement") with Mid-Atlantic Equipment Company ("Seller") pursuant to which Seller has sold, and Buyer has purchased certain leases covering equipment including, without limitation, the right to receive, retain and enforce the rental payments due thereunder; WHEREAS, in order to secure more fully all of Seller's obligations and liabilities to Buyer under the Agreement and under any other agreement or document delivered pursuant thereto ("Obligations") including, without limitation, indemnification obligations of Seller to Buyer pursuant to the Agreement, Seller hereby is pledging and assigning and granting a first security interest in and lien on the equipment underlying each lease as such are more fully described in Exhibit "A" attached hereto, including, without limitation, the right to any insurance proceeds and any cash and noncash proceeds as a result of any lease or sale of equipment (all of the foregoing property hereinafter referred to as "Collateral").
 
 
 13
 (Emphasis added).
 
 
 14
 We note two difficulties with respect to this alleged assignment of the Lease Agreement. First, the Agreement referred to in the first paragraph of this Assignment and Pledge of Collateral is dated January 9, 1987. The Lease Agreement between Futures in Cleaning and Mid-Atlantic, which is at issue in this case, was not executed until November 18, 1987. Therefore, we find that the Assignment and Pledge of Collateral could not have been intended to encompass the November 18, 1987 Lease Agreement allegedly guaranteed by the Guarantors.
 
 
 15
 Second, the above referenced "Exhibit A" makes no mention of the November 18, 1987 Lease Agreement, or any other lease. "Exhibit A" simply consists of a list of dry cleaning equipment under the name of Futures in Cleaning. It would appear from these documents, therefore, that OFC purchased no more than a security interest in the equipment listed in "Exhibit A."
 
 
 16
 Similarly, the Bill of Sale assigns to OFC all of Mid-Atlantic's "interest in and to all Leases described in Exhibit'A' attached hereto and made a part hereof ('Purchased Leases') covering the equipment described therein...." The "Exhibit A" attached to the Bill of Sale is identical to the "Exhibit A" attached to the Assignment and Pledge of Collateral, which does not describe or include the Lease Agreement of November 18, 1987.
 
 The Bill of Sale goes on to state:
 
 17
 This Bill of Sale is made pursuant and subject to the provisions of that certain Agreement dated January 09, 1987 between Dealer and OFC....
 
 
 18
 Again, January 9, 1987 precedes the November 18, 1987 transaction at issue here. Accordingly, we affirm the district court's ruling in favor of the Guarantors on the ground that OFC has failed to carry its burden of establishing its ownership of the November 18, 1987 Lease Agreement and therefore lacks standing to sue the Guarantors for enforcement of the Guaranties.*
 
 AFFIRMED
 
 
 *
 OFC argues in its brief that the order of the district court granting judgment as a matter of law in favor of OFC against Futures in Cleaning is inconsistent with its order granting judgment as a matter of law in favor of the Guarantors. We disagree
 While the Guarantors initially filed an answer to OFC's complaint on behalf of Futures in Cleaning, they later abandoned the defense of this now defunct corporation. Judge Perry simply found Futures in Cleaning in default in this action and entered judgment against it. The Guarantors are not adversely affected by this judgment against Futures in Cleaning.